IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOE SHIELDS | § | |
| | § | |
| *Plaintiff on behalf of himself and* | § | |
| *all others similarly situated* | § | |
| | § | |
| vs | § | CIVIL ACTION NO. _____ |
| | § | |
| ULTIMATE VACATION GROUP LLC | § | JURY DEMANDED |
| d/b/a ROYAL BAHAMAS CRUISE LINE | § | |
| | § | |
| *Defendant* | § | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, Joe Shields, pleading on his own behalf and on behalf of all others similarly situated, complains of Ultimate Vacation Group, LLC ("Ultimate" or "Defendant") as follows based on personal knowledge, investigation of counsel, and information and belief:

## NATURE OF ACTION

1. This case involves a scheme by a travel company to market purportedly "free" cruises[1] in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. Plaintiff brings this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of Defendant.

3. Ultimate violated the TCPA by contacting Plaintiff and Class members on their cellular or residential telephones for non-emergency purposes via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without Plaintiff's and Class members' prior express

---

[1] On information and belief, Ultimate charges cruise passengers for port fees, taxes, alcohol, incessantly up-sells additional tickets, superior rooms, additional nights, and other services. Ultimate also fails to disclose

written consent within the meaning of the TCPA. In the alternative, Ultimate caused a third party telemarketing company to make the subject calls on its behalf.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least ten thousand is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

6. This Court has personal jurisdiction over Ultimate because it has established minimum contacts showing it purposefully avails itself to the resources and protection of the State of Texas, including but not limited to purportedly using a phone number with an 832 area code to robocall Plaintiff and sell its products and services. This Court also has personal jurisdiction over Ultimate because the conduct at issue in his case occurred, among other locations, in Texas.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), because Plaintiff resides within the Southern District of Texas, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

---

that a rental car is required in order to travel to a required, strong-armed timeshare pitch.

**PARTIES**

8. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Friendswood, Texas.

9. Ultimate is, and at all times mentioned herein was, a company headquartered at 1642 W Airport Blvd., Sanford, Florida 32773. It may be served with process at its headquarters or upon its registered agent, Johnathan B. Curtis, at 5224 W. State Rd. 46, Unit #139, Sanford, Florida 32771.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA[2] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."

12. Specifically, the plain language of section 227(b)(1)(A)(iii) of the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. Section 227(b)(1)(B) prohibits using an artificial or prerecorded voice to deliver a message to a residential telephone line in the absence of an emergency or the prior express consent of the called party.

13. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

---

[2] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

14.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

15.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number are permitted only if the calls are made with the "prior express consent" of the called party.[4] In 2012, the FCC further explained that "prior express consent" was required to be "written." In particular, the FCC explained, "Based on substantial record support and evidence of continued consumer frustration with unwanted telemarketing robocalls, and in furtherance of the statutory goal of maximizing consistency with the FTC's telemarketing rules, we adopt the consumer protection measures proposed in the *2010 TCPA NPRM*. First, we require prior express written consent for telemarketing robocalls to wireless numbers and residential lines. Second, we eliminate the 'established business relationship' exemption as it previously applied to telemarketing robocalls to residential lines."[5]

16.     In the 2008 FCC Declaratory Ruling, the FCC reiterated that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

17.     The FCC further explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."[6]

---

[3] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 (¶ 165) (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2008 FCC Declaratory Ruling"), CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008).

[5] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling") CG Docket No. 02-278, (¶ 18) (February 15, 2012) (emphasis added).

[6] *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion

18. In the event Ultimate used a third party telemarketing company to place the subject calls, the third party clearly made the autodialed and prerecorded message calls described herein "on behalf of" Ultimate within the meaning of the 2008 FCC Declaratory Rulings and 47 U.S.C. §227(c)(5).

19. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[7]

20. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

21. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587, fn.107.

22. Ultimate is therefore legally responsible for ensuring that its vendor, if any such vender was used, complied with the TCPA, even if Ultimate did not itself make the calls.

---

and Order, 10 FCC RCD. 12391, 12397 (¶ 13) (1995).

[7] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

23. Ultimate knew (or reasonably should have known) that the telemarketer was violating the TCPA on Ultimate's behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

24. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS

**Plaintiff**

25. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26. Plaintiff is not an Ultimate customer and has never provided his cell phone number to Ultimate. Plaintiff has never provided his cell phone number to any other entity whereby Ultimate became privileged to make telemarketing calls to Plaintiff's cell phone.

27. On August 25, 2014 at 5:59 p.m., Plaintiff received a telephone call from the number 832-547-4267.

28. When Plaintiff answered the call, a prerecorded message played that told Plaintiff, "Congratulations! You have been selected to receive a free cruise to the Bahamas. You heard correctly it's a cruise to the Bahamas for two people and like most cruises all the expenses are included. Committee For Change would like for you to participate in a short survey and at the end

of the survey you will be awarded your cruise. Press one now to start the survey and receive two complementary cruise tickets. To decline the survey and be removed from our list press nine."

29. Plaintiff recognized the call as using an automated telephone dialing system because there was a significant delay after Plaintiff answered before the recorded message began. In addition, the voice tone and background noise on the call sounded prerecorded, as opposed to a live voice.

30. Plaintiff pressed "1" in an effort to identify the entities responsible for the illegal telemarketing call. A survey of six yes or no questions regarding various political issues ensued. At the end of the automated survey, the recording stated, "For completing the survey you are receiving two free boarding passes for an all-inclusive cruise to the Bahamas. Please note that you can add more passes for other friend or family members if you would like them to join you. Please press one now to have a travel coordinator call you in the next twenty-four to forty-eight hours to assign you your reservation number. Thank you and have a great day." Plaintiff pressed "1" to identify the party calling him.

31. Plaintiff did not provide prior consent, much less written consent, to receive the call.

32. Approximately thirty six minutes later at 6:35 p.m., Plaintiff received a call from a live person from 561-225-2168. That number is assigned to Ultimate. The Ultimate representative admitted that he was calling on behalf of Royal Bahama Cruise Line (a registered fictitious name for Ultimate) as a result of the prior automated call to Plaintiff's cellular phone and attempted to sell and upsell Ultimate's travel product and services.

**Defendant**

33. Ultimate is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

34. Upon information and belief, Ultimate oversees and controls telemarketers' actions.

35. Upon information and belief, if Ultimate did not place the subject calls itself, it authorized and controlled a telemarketing firm to solicit business through automated, prerecorded calls.

**Direct Liability**

36. Ultimate initiated, directed the manner of, and actively participated in the subject telemarketing calls that are the subject of this case.

37. The August 25, 2014 call to Plaintiff demonstrates one example of this direct participation. Had Plaintiff accepted the "free" cruise, Ultimate would have sold products and services to Plaintiff. In point of fact, Ultimate followed the robocall with a live call to market its products and services to Plaintiff.

38. It is the purpose of a call, rather than what is said, that matters for TCPA liability. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012).

39. Each call, regardless of how "far" the call recipient permitted the sales pitch to go, was intended by all parties involved to result in sales of Ultimate's products and services.

40. Because Ultimate initiated, directed, and actively participated in the calls, and at a minimum acted in concert to telemarket its products and services, no vicarious liability theory is necessary. Ultimate may be held directly liable for the calls.

41. Regarding principal liability, the 3d Restatement provides:

§ 7.03 Principal's Liability--In General

(1) A principal is subject to ***direct liability*** to a third party harmed by an agent's conduct when

(a) as stated in § 7.04, the agent acts with actual authority or the principal ratifies

the agent's conduct and

(i) the agent's conduct is tortious, or

(ii) the agent's conduct, if that of the principal, would subject the principal to tort liability; or

(a) as stated in § 7.05, the principal is negligent in selecting, supervising, or otherwise controlling the agent; or

(b) as stated in § 7.06, the principal delegates performance of a duty to use care to protect other persons or their property to an agent who fails to perform the duty.

(2) A principal is subject to vicarious liability to a third party harmed by an agent's conduct when

(a) as stated in § 7.07, the agent is an employee who commits a tort while acting within the scope of employment; or

(b) as stated in § 7.08, the agent commits a tort when acting with apparent authority in dealing with a third party on or purportedly on behalf of the principal.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.03 cmt. d(2) (2006) (emphasis added).

42. Ultimate is therefore directly liable for the calls described herein.

43. The Federal Communication Commission concurs that sellers such as the Ultimate may not avoid liability by outsourcing telemarketing:

> Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

**Actual Authority**

      44.    With regard to torts committed by an agent, the Restatement provides:

§ 7.04 Agent Acts With Actual Authority

A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and

    (1)   the agent's conduct is tortious, or

    (2)   the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

      45.    The purpose of the Ultimate telemarketing agents, if any, was to serve Ultimate by soliciting sales leads from consumers on behalf of Ultimate.

      46.    Telemarketers had the actual authority of Ultimate to make the complained-of calls.

      47.    Ultimate authorized telemarketers to perform telemarketing.

      48.    The telephone number that telemarketers, acting on behalf of Ultimate, called to contact Plaintiff with an "artificial or prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

      49.    Plaintiff did not provide his prior express consent allowing Ultimate or its telemarketers to place telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A). On information and belief, Ultimate did not have the prior express consent, much less prior *written* consent required under the TCPA, for any of the automated calls it has placed.

50.     Telemarketers, acting on behalf of Ultimate, did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

51.     The call made by or on behalf of Ultimate to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" for non-emergency purposes and in the absence of Plaintiff's prior written consent, violated 47 U.S.C. § 227(b)(1)(A).

52.     Under the TCPA, the burden is on the Defendant to demonstrate that Plaintiff and Class Members provided prior written consent within the meaning of the statute.[8]

53.     The Defendant acted willfully, knowingly, and without regard to the TCPA when they caused the calls described above to be made.

**Apparent Authority**

54.     In the alternative, Ultimate gave telemarketers substantial power to affect their legal relations with third parties, including Plaintiff and consumers generally.

55.     Ultimate covered telemarketers with apparent authority to enter into advertising arrangements on its behalf, including through telemarketing.

56.     The telemarketers specifically reference a Bahamian cruise in the automated call and explicitly state they have the authority to give it away for "free" and "all expenses paid." Upon information and belief, telemarketers had authority to offer the so-called "free" cruise. Plaintiff reasonably believed that the telemarketer called him as an agent of Ultimate a/k/a Royal Bahamas Cruise Line.  Additionally, since a Royal Bahamas Cruise Line representative followed the robocall with a live call regarding the "free" cruise, Plaintiff's belief was confirmed as reasonable by the principal, Ultimate.  "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is

---

[8] *See 2008 FCC Declaratory Ruling*, 23 FCC Rcd at 565 (¶ 10).

reasonable and is traceable to a manifestation of the principal." RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. c (2006). As such, the telemarketers are an apparent agent of Ultimate.

**Ratification**

57. In the alternative, Ultimate repeatedly ratified the illegal marketing scheme by knowingly accepting the benefits of the telemarketing activities when it accepted sales leads from the telemarketer. These sales leads provided Ultimate with additional business prospects.

58. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *See* RESTATEMENT (THIRD) OF AGENCY § 4.01(1) (2006). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* § 4.01(2); *see also* ID. cmt. d ("[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction.").

59. Upon information and belief, Ultimate was, at a minimum, aware of the marketing scheme and that the leads resulted from calls using an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" when it accepted the marketing leads.

60. Ultimate manifested an intent to accept the benefit of the calling campaigns; including calls that were made on its behalf but that did not result in a sale.[9]

61. Because Ultimate accepted benefits from numerous calls, Ultimate cannot avoid the burden associated with their ratification.[10]

---

[9] It is the purpose of the call that is relevant for TCPA purposes, rather than what is actually said or how far into the telemarketing script the caller goes. *See Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14098 ¶141 136, 2003 WL21517853 (F.C.C. July 3, 2003)).

[10] The FCC also emphasized in its Order that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA plaintiffs discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a

## CLASS ACTION ALLEGATIONS

62. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63. Plaintiff brings this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

64. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who received a non-emergency telephone call from or on behalf of Ultimate Vacation Group LLC to a cellular or residential telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice within the applicable statute of limitations.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Class.

65. Excluded from the Class are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, and claims for personal injury, wrongful death and/or emotional distress.

66. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the thousands.

67. Plaintiff and all members of the Class have been harmed by the acts of the Defendant.

68. This Class Action Complaint seeks injunctive relief and money damages.

---

minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information—should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *May 2013 FCC Ruling*, 28 FCC Rcd at 6592-593 (¶ 46). This

69. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

70. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

71. Further, the Class can be identified easily through records maintained by Ultimate and/or other telemarketing agents.

72. There are well defined, nearly identical, questions of law and fact affecting all parties.

73. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

74. Such common questions of law and fact include, but are not limited to, the following:

   a. Whether Ultimate, or telemarketers acting on behalf of Ultimate, used an automatic telephone dialing system in making non-emergency calls to Class members' cell or residential phones;

   b. Whether Ultimate, or telemarketers acting on behalf of Ultimate, used an artificial or prerecorded voice in its non-emergency calls to Class members' cell or residential phones;

   c. Whether the Defendant can meet its burden of showing it obtained prior express consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

   d. Whether the Defendant's conduct was knowing and/or willful;

   e. Whether the Defendant is liable for statutory damages; and

---

complaint has been drafted without the benefit of discovery from Ultimate.

  f.  Whether the Defendant should be enjoined from engaging in such conduct in the future.

  75.  As a person who received a non-emergency telephone call using an automatic telephone dialing system or an artificial or prerecorded voice, without providing his prior express consent to the Defendant within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

  76.  Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.

  77.  Plaintiff has no interests which are antagonistic to any member of the Class.

  78.  Plaintiff has retained counsel experienced in handling class actions, including class claims involving violations of the TCPA.

  79.  A class action is the superior method for the fair and efficient adjudication of this controversy.

  80.  Class wide relief is essential to compel the Defendant to comply with the TCPA. In point of fact, at least one individual has filed suit against Ultimate for violating the TCPA, but the robocalls have continued unabated.

  81.  The interest of the Class members in individually pursuing claims against the Defendant is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendant from engaging in the same behavior in the future.

  82.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior written consent required under the statute to authorize such calls to their cellular or residential telephones.

83. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

84. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION
## FIRST COUNT
## STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

85. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

86. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

87. As a result of the Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

88. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendant's violation of the TCPA in the future.

89. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

90. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

91. The foregoing acts and omissions of the Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

92. As a result of the Defendant's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

93. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendant in the future.

94. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendant:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

B. As a result of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

C. As a result of Defendant's statutory violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class member $500 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class as permitted by law;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F. Such other relief as the Court deems just and proper.

Respectfully submitted,

WYNNE & WYNNE LLP

By: */s/ David E. Wynne*
David E. Wynne
Fed. No. 566468
State Bar No. 24047150
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
dwynne@wynne-law.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFF and PLAINTIFF CLASS**

OF COUNSEL:

Kenneth R. Wynne
Texas Bar No. 22110000
Fed. No. 837
W<span>YNNE</span> & W<span>YNNE</span> LLP
1021 Main Street, Suite 1275
One City Centre
Houston, TX  77002
(713) 227-8835 (Telephone)
(713) 227-6205 (Facsimile)
kwynne@wynne-law.com